UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 01-115(01)(JMR/RLE)
Civil No. 05-249(JMR)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Respondent,<br>v.<br>LUIS ESPINOZA,<br>a/k/a Daniel Mendoza<br>Petitioner. | **MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. SECTION 2255** |

The United States of America, through its attorneys, Thomas B. Heffelfinger, United States Attorney for the District of Minnesota, and Assistant United States Attorney Andrew Dunne, submits the following opposition to Petitioner's Section 2255 motion.

## INTRODUCTION

The Petitioner, Luis Espinoza, a/k/a "Daniel Mendoza", has filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. The Petitioner challenges the timing of the Section 851(a) Information filed by the Government. Petitioner's claims are wholly without merit.

## STATEMENT OF THE CASE AND FACTS

This case involved the investigation and prosecution of the methamphetamine trafficking activities of the Petitioner, Luis Manuel ESPINOZA, a/k/a Daniel MENDOZA, and his co-defendant Alejandro Montoya from January through March, 2001 in the Duluth, Minnesota area. See Presentence Report (PSR), ¶ 5.

**A. The Investigation**

In 2001, the Minnesota Bureau of Criminal Apprehension (BCA) and other law enforcement agencies were conducting an investigation into methamphetamine trafficking activities in the Duluth, Minnesota area. On March 16, 2001, BCA agents executed a state search warrant at the residence of John Horton in Duluth, Minnesota. See Trial Transcript (Tr.) at 150. During the execution of this search warrant, the agents recovered approximately ten grams of methamphetamine, a scale (commonly used to weigh narcotics), packaging materials and drug notes. See Tr. at 151. The agents interviewed Mr. Horton and he agreed to cooperate with them in their investigation. See Tr. at 153-54. Horton told the agents that he had been purchasing methamphetamine from two Hispanic males, known to him as "Dan MENDOZA" and "Jose." Id. Horton advised the agents that these two individuals were currently in town with a large quantity of methamphetamine. Id. Horton told the agents that these two individuals were staying at the nearby Black Bear Casino and were driving a silver/grey Chevy Lumina with California license plates. Id.

Upon receiving this information, the BCA agents proceeded to the Black Bear Casino and located a silver/grey Chevy Lumina with California license plates in the parking lot. See Tr. at 155. The agents checked with personnel from the Black Bear Casino and learned that the vehicle was connected to Room 371 under the

registered guest name of DAN MENDOZA with an address in Santa Ana, California. See Tr. at 156. The Chevy Lumina was registered to a "Jose" with a Santa Ana, California address. Id. A trained narcotics detection canine unit subsequently alerted on the Chevy Lumina indicating positive for the presence of controlled substances. See Tr. at 157.

The BCA agents obtained and executed state search warrants for Room 371 at the Black Bear Casino and the Chevy Lumina. See Tr. at 158. During the execution of the search warrant, the agents located Dan MENDOZA (who identified himself to the agents as Luis Manuel ESPINOZA, Alejandro Montoya (known to Horton as "Jose") and two females inside of the motel room. See Tr. at 162. Also inside the motel room, the agents recovered approximately 750 grams of methamphetamine in several packages located throughout the room, drug notes and ledgers, and other items of drug trafficking paraphernalia including packaging equipment and a box of plastic baggies. See Tr. at 165-190. The agents also recovered a Smith & Wesson .38 caliber handgun and ammunition from the Chevy Lumina in the parking lot. See Tr. at 199.

The agents placed all four occupants of Room 371 under arrest. See Tr. at 197. As the agents were doing this, defendant ESPINOZA voluntarily stated, "Why are you taking the girls? They have nothing to do with this." See Tr. at 198.

**B. The Federal Charges**

On April 18, 2001, a two-count Indictment was filed in the District of Minnesota charging both defendants with federal narcotics violations. The Indictment contained the following charges:

> Count 1: Charged both defendants with aiding and abetting possession with intent to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2.
>
> Count 2: Charged both defendants with conspiracy to possess with intent to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

**C. The Trial**

On December 3, 2001, a jury trial commenced against both defendants before Judge James M. Rosenbaum, U.S. District Court Judge, District of Minnesota.

The Government called three witnesses to testify at trial. John Horton testified that he had purchased small amounts of methamphetamine from defendant Montoya, who he knew as "Jose" and defendant ESPINOZA, who he knew as Daniel MENDOZA. Horton testified that he was first introduced to defendant Montoya in January, 2001 by a friend named "Pikey." See Tr. at 33-35. Horton began purchasing small amounts of methamphetamine from defendant Montoya through "Pikey" acting as a middle man. Id.

Horton testified that he made arrangements to purchase an ounce of methamphetamine from defendant Montoya for $1,000. See Tr. at 49. Horton gave "Pikey" a $400 down payment for the methamphetamine. See Tr. at 51. A few days later, "Pikey" and defendant Montoya delivered the methamphetamine to Horton. See Tr. at 53-54. Horton testified that "Pikey" and both defendants later came to his residence to collect the outstanding $600 drug debt. See Tr. at 57-58. Horton agreed to trade a car to defendant Montoya as payment for the drug debt. See Tr. at 60-61. Horton also allowed defendant ESPINOZA to use Horton's address for the billing of his cellular telephone. See Tr. at 63-64.

Horton testified that he had subsequent telephone conversations with defendant Montoya regarding the future purchase of methamphetamine. See Tr. at 68-70. ESPINOZA, Montoya, and two women came to Horton's home on March 16, 2001. See Tr. at 72-73. Horton discussed buying methamphetamine with both defendants and they told him that they did not have it with them, but would have to "leave and break it up." See Tr. at 74. Defendant Montoya agreed to "front" the methamphetamine to Horton for payment at a later time. See Tr. at 75-76. Later on March 16, Horton met with both defendants at the Black Bear Casino and obtained approximately one ounce of methamphetamine from them. See Tr. 77-81.

Later on March 16, police officers executed a search warrant at Horton's residence in Duluth and found less than an ounce of

methamphetamine. See Tr. at 75-81. Horton told the officers that he had purchased the methamphetamine from the defendants at the Black Bear Casino. Id. Horton told the officers that the defendants were staying at the Black Bear Casino and had brought a shipment of methamphetamine to Minnesota. Id. Horton also told the officers that the defendants had a Chevy Lumina with California license plates in the parking lot of the Black Bear Casino. Id.

At trial, Horton identified both defendants as the individuals from whom he had been purchasing methamphetamine.

Minnesota BCA Special Agent (SA) Jerry Koneczny also testified at trial. SA Koneczny testified that he executed a state search warrant on March 16, 2001 at the residence of John Horton in Duluth, Minnesota and recovered approximately ten grams of methamphetamine, a scale and packaging materials. See Tr. at 150-52. SA Koneczny interviewed Horton who told the agents that he had purchased the methamphetamine from the defendants while at the nearby Black Bear Casino. See Tr. at 154-56. Horton gave SA Koneczny a physical description of the defendants and their vehicle. Id. Horton also subsequently identified the defendants in a photo lineup. See Tr. at 89-90, 209.

SA Koneczny located the silver/grey Chevy Lumina, with California license plates, in the parking lot of the Black Bear Casino. See Tr. at 156-57. A trained narcotics canine unit alerted on the vehicle indicating positive for the presence of

narcotics. Id. After speaking with personnel at the casino, the agents connected the vehicle to Room 371 at the casino which listed the registered guest as Dan MENDOZA with a Santa Ana, California address. See Tr. at 156. The agents then obtained state search warrants for Room 371 and the Chevy Lumina. Id.

When the agents entered Room 371 to execute the search warrant at approximately 4:00 a.m., four people were located inside the room: Daniel MENDOZA, who identified himself to the agents as Luis ESPINOZA; Alejandro Montoya; and two females. See Tr. at 162. Inside the room, the agents recovered approximately 750 grams of methamphetamine scattered throughout the room: a package wrapped in cellophane and lying on the floor next to the beds; a package wrapped in black tape inside a microwave oven; a package inside a red travel bag on top of a dresser; and a package concealed behind a ceiling tile in the bathroom. See Tr. at 165-196. Also on top of the dresser was a blue notebook that contained drug notes and a drug ledger with Horton's and "Pikey's" names in it. Id. Discarded packaging material, including black tape, was found in a garbage can in the bathroom. Id. An opened box of plastic baggies was also found in the bathroom. Id. Two Nokia cellular telephones were recovered from the night stand that matched the telephone numbers previously given to the agents by Horton. Id.

The agents recovered defendant ESPINOZA's wallet which contained a Cellular One telephone bill in the name Dan MENDOZA, a

California driver's license in the name Dan MENDOZA, a social security card in the name Dan MENDOZA, and a payment slip in the name Dan MENDOZA with John Horton's address. See Tr. at 170-178. The agents also recovered defendant Montoya's wallet which contained an international ID card in the name Alex Montoya and a business card with John Horton's telephone number written on the back. See Tr. at 178-82.

The agents placed all four occupants in Room 371 under arrest. See Tr. at 197. As the agents were doing this, SA Koneczny testified that defendant ESPINOZA voluntarily stated, "Why are you taking the girls? They have nothing to do with this." See Tr. at 198.

The agents also searched the Chevy Lumina in the parking lot of the Black Bear Casino. See Tr. at 199. The agents recovered a Smith & Wesson .38 caliber handgun and ammunition from the vehicle. See Tr. at 203. The agents also recovered a Cellular One telephone contract in the name of Dan MENDOZA with John Horton's address listed on it. Id.

Finally, at trial, the Government submitted a Stipulation between the parties that "the substance seized ... was tested by a forensic chemist and was found to be d-methamphetamine hydrochloride (methamphetamine)"... with the "sum total weight of 753.2 grams." See Government Trial Exhibit 53; Tr. at p. 287.

Following two days of trial, the jury returned a guilty verdict against both defendants on both counts of the Indictment. In the Special Verdict Form submitted to the jury during their deliberations, the jury determined that Petitioner was accountable for "more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine" in connection with both counts of the Indictment. See Special Verdict Form (Attachment A).

**D. The Sentencings**

On July 24, 2002, Petitioner ESPINOZA appeared before Judge Rosenbaum for sentencing. Judge Rosenbaum imposed a term of imprisonment of 240 months to be followed by a ten-year term of Supervised Release.

On October 2, 2002, defendant Montoya appeared before Judge Rosenbaum for sentencing. Judge Rosenbaum imposed a term of imprisonment of 180 months to be followed by a five-year term of Supervised Release.

**E. The Appeals**

On August 7, 2002, Petitioner ESPINOZA filed a timely Notice of Appeal. Petitioner ESPINOZA challenged his conviction claiming that he was denied due process based upon prejudicial comments made by the prosecutor during rebuttal closing argument.

Defendant Montoya also filed a timely Notice of Appeal challenging his conviction by claiming there was insufficient evidence to convict him of the charges in the Indictment.

On November 10, 2003, the Eighth Circuit rejected the Petitioner's appellate claims and concluded that " the prosecutor's remarks during rebuttal closing argument were not improper." See United States v. Luis Espinoza, 349 F. 3d 525, 528 (8th Cir. 2003).

The Petitioner did not file a Petition for a Writ of Certiorari with the United States Supreme Court within the 90-day time period specified in Supreme Court Rule 13.1. Accordingly, the Petitioner's conviction became final on February 10, 2004. The Petitioner timely filed the instant motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 on January 31, 2005.

## ARGUMENT

### A. PETITIONER HAS FAILED TO DEMONSTRATE THAT HIS COUNSEL WAS INEFFECTIVE.

Petitioner argues that he was denied his Sixth Amendment right to effective assistance of counsel. In order to establish such a claim, the Petitioner must demonstrate that his counsel's performance fell below an objective standard of "reasonableness under prevailing professional norms" and that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688 (1984). This Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

In the present case, the Petitioner claims that his counsel was ineffective for failing to challenge the timing of the Section 851(a) Information filed by the Government. Petitioner's claims are wholly without merit.

The pre-requisite for a sentence enhancement under 21 U.S.C. § 841(b) is a timely filed Information detailing the prior convictions the Government intends to rely upon to support such a sentence enhancement. See 21 U.S.C. § 851(a)(1). It is well established that to satisfy the procedural requirements of Section 851, the "Government must file its Information before jury selection begins, thus allowing the defendant ample time to determine whether he should enter a plea or go to trial, and plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." See United States v. Velazquez, 410 F.3d 1011, 1014 (8th Cir. 2005); United States v. Stallings, 301 F.3d 919, 920 (8th Cir. 2002); United States v. Robinson, 110 F.3d 1320, 1328 (8th Cir. 1997); United States v. Johnson, 944 F.2d 396, 407 (8th Cir.), cert. denied, 502 U.S. 1008 (1991). In Robinson, the Eighth Circuit held that the Government complied with the section 851 notice requirements when it filed the Information just minutes before the jury pool was brought in for voir dire. See United States v. Robinson, 110 F.3d at 1328.

Here, Petitioner's procedural contentions are without merit. Pursuant to the attached Affidavit of AUSA Anthony Brown, the

federal prosecutor who tried this case before Judge Rosenbaum, the Government filed a copy of the Section 851 Information with the Court "immediately after [defense counsel] advised that [the Petitioner] had finally rejected the plea offer, before any questioning of the jury venire had begun, and before any official case proceeding had commenced that morning." See Affidavit of Anthony Brown (Attachment A). Accordingly, pursuant to well established Eighth Circuit precedent, the Petitioner received timely notice of the Government's intent to seek the Section 851(a) sentence enhancement before jury selection began and had an opportunity to challenge the prior conviction before sentence was imposed.

Applying the principles set forth in Strickland to Petitioner's claim, the Petitioner must establish both (1) that his counsel's alleged errors fell below an objective standard of "reasonableness under prevailing professional norms" and (2) that, but for the errors, the result would have been different, i.e., that the Petitioner would not have received the same sentence imposed upon him by the District Court. The Petitioner cannot establish either prong, and his claim of ineffective assistance of counsel should, therefore, be denied.

## **CONCLUSION**

For all of the foregoing reasons, the Petitioner's motion under 28 U.S.C. § 2255 should be denied.

Respectfully submitted,

Dated: August 3, 2005

THOMAS B. HEFFELFINGER
United States Attorney

BY: ANDREW DUNNE
Assistant U.S. Attorney
Attorney ID Number 175195