# AFFIDAVIT

My name is Anthony W. Brown. I am more than twenty-one years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated. All of the statements herein are true and correct.

I have served as an Assistant United States Attorney since December 1991. I currently serve as the supervising Assistant United States Attorney for the Austin Division office of the United States Attorney's Office for the Western District of Texas. My business address is 816 Congress Ave., Suite 1000, Austin, Texas. My business telephone number is 512/916-5858. I served as an Assistant United States Attorney in the District of Minnesota from August 1997 through August 2002. I was the trial prosecutor in the case of USA v. Luis Espinoza aka Dan Mendoza, and Alejandro Montoya, Criminal Case Number 01-115 (JMR) in the United States District Court, District of Minnesota, which was presided over by the Honorable James M. Rosenbaum. Mr. Espinoza was represented by criminal defense attorney Arthur Martinez.

Law enforcement agents with the Minnesota Bureau of Criminal Apprehension ("BCA") learned that Mr. Espinoza and Mr. Montoya had been bringing or shipping methamphetamine from the West Coast of the United States to Minnesota to supply several of their customers with methamphetamine for distribution. During the investigation of the drug trafficking case against Mr. Espinoza and Mr. Montoya, the investigative agents learned of and obtained certified copies of court records from the Orange County District Court, Orange County, California which reflected that Mr. Espinoza had been convicted on August 4, 1997 for the felony drug offense, Possession of a Controlled Substance. Upon completion of the investigation, a grand jury returned a two-count indictment against Mr. Espinoza and Mr. Montoya as co-defendants for

ATTACHMENT A

Possession With Intent to Distribute in excess of 500 grams of Methamphetamine, and Conspiracy to Possess With Intent to Distribute in excess of 500 grams of Methamphetamine. The District Court had scheduled the trial against Mr. Espinoza and Mr. Montoya to start on December 3, 2001. Each count in the Indictment carried a range of punishment that included a mandatory minimum sentence of ten years, in addition to any sentencing factors applicable pursuant to the United States Sentencing Guidelines provisions.

As a result of Mr. Espinoza's prior felony drug conviction, he was subject to the enhanced sentencing provisions of 21 U.S.C.§§ 841(b)(1)(A) and 851, which upon conviction of either Count 1 or Count 2 of the indictment and proof of the prior felony drug conviction would have exposed him to a mandatory minimum sentence of twenty years. In addition to providing the discovery materials governed by Rule 16 of the Federal Rules of Criminal Procedure, I maintained an "open file" in this case and granted Mr. Espinoza's attorney access to all non-privileged materials in the United States' file, including the information concerning Mr. Espinoza's criminal history. During pre-trial negotiations, Mr. Martinez indicated that his client was interested in entering a plea to one count of the indictment, provided that the United States would forgo filing the sentence enhancement Information pursuant to 21 U.S.C. § 851, dismiss the remaining count of the indictment, and recommend to the District Court that Mr. Espinoza not be held liable for a firearm that was found in the van driven by Mr. Espinoza and Mr. Montoya to Minnesota.

On March 17, 2001, law enforcement officials executed a search warrant in a room at the Black Bear Hotel and Casino in Carlton County, Minnesota, which was registered to Mr. Espinoza under the name of "Daniel Mendoza." Upon finding several hundred grams of a substance which field-tested positive for methamphetamine, Mr. Espinoza, Mr. Montoya, and

two Hispanic females were arrested for possession of a controlled substance. Mr. Espinoza made several statements of an incriminating nature both before and after his arrest at the hotel and during his later transport from the Carlton County jail to Minneapolis. Mr. Montoya and the two females, one of whom was a juvenile, insisted to the officers that they had simply accompanied Mr. Espinoza to Minnesota on a short vacation from the West Coast and were unaware of the presence of any illegal narcotics. The law enforcement officials released the two females to the Immigration and Naturalization Service and they were not charged for the narcotics violations. Mr. Montoya, through his attorney, Barry Voss, always maintained that he wanted a trial and was not interested in resolving the case through a plea agreement. Although the BCA and DEA had developed a case against Mr. Montoya also, it appeared that Mr. Montoya's defense strategy was going to be an attempt to show that he, like the two females, had just accompanied Mr. Espinoza to Minnesota on vacation and was not involved in the drug trafficking.

In anticipation of having to go to trial in Mr. Montoya's case, and in response to Mr. Martinez' request for a plea agreement, I offered a plea agreement to Mr. Espinoza which, in essence would permit him to enter a plea to Count 2 of the Indictment (the Conspiracy count), and I would not file the sentence enhancement Information pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851, *on the condition that* Mr. Espinoza would cooperate with the law enforcement officers, debrief about all of the relevant facts concerning his and Mr. Montoya's activities related to the possession and distribution of methamphetamine in Minnesota, *and* that he truthfully testify in the trial against Mr. Montoya.

I met with or spoke to Mr. Martinez on several occasions during the week of November 26, 2001 in an effort to finalize the terms of a plea agreement. Mr. Martinez advised that Mr. Espinoza wanted to enter a plea agreement but did not wish to testify against Mr. Montoya. I

informed Mr. Martinez that his client could enter a plea without testifying but that I would file the sentence enhancement Information on Friday, November 30, 2001, if Mr. Espinoza planned to go to trial or did not accept the terms of the proposed plea agreement. Mr. Martinez asked me not to file the Information as he would recommend to his client that he accept the terms of the plea agreement and cooperate as that was the best way to limit his client's exposure to a minimum twenty years short of an acquittal at trial. As late as the afternoon of Friday, November 30, 2001, Mr. Martinez called and advised me that notwithstanding Mr. Espinoza's reluctance to testify as a witness, his client wanted to accept the plea agreement, in large part because of the risk of facing a twenty-year sentence. Based upon the representation of Mr. Martinez, I did not file the sentence enhancement Information on November 30, 2001, with the District Court Clerk.

On Monday, December 3, 2001, I arrived at the District Court courtroom around 8:30am to await the arrival of Mr. Martinez to give him copies of the finalized plea agreement for his client to sign. Upon Mr. Martinez's arrival, I inquired if his client was ready to sign up, and further advised that Minnesota BCA Agent Jerry Koneczny would start the debriefing during the noon break and continue into the afternoon while I was in trial. Mr. Martinez went to speak with his client as soon as the Deputy U.S. Marshals brought him up to the courtroom and upon his return a few minutes later he advised that Mr. Espinoza would not testify against Mr. Montoya and would take his chances at trial with Mr. Montoya. At this time, I informed Mr. Martinez that I would present the sentence enhancement Information to the Deputy District Court Clerk for filing. The sentence enhancement Information reflected that the United States would rely upon Mr. Espinoza's Orange County, California felony drug conviction in order to enhance his sentence range of punishment. After showing Mr. Martinez a copy of the Information for his review, I approached the Deputy District Court Clerk with the pleading. Mr. Martinez went over

to his client in the courtroom, spoke with him a few seconds, and then looked at me and shook his head "no." At that time I gave the pleading to the Deputy District Court Clerk for filing. The conversations with Mr. Martinez and Mr. Espinoza, as well as the presentment of the pleading to the Deputy District Court Clerk for filing, occurred on the morning of December 3, 2001, before Judge Rosenbaum took the bench, before the jury venire panel was seated, and before jury selection began that morning in the case against Mr. Espinoza and Mr. Montoya.

I am now and I was then aware of the federal rules of criminal procedure and law with respect to when a sentence enhancement Information must be filed pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851 in order to effectively trigger the sentencing enhancements against a defendant–in this case raising the mandatory minimum sentence from ten years to twenty years upon conviction and proof of Mr. Espinoza's prior felony drug conviction. In this case, I presented the pleading to the Deputy District Court Clerk for filing before the case had been called on the docket or any official court proceeding connected with the case had commenced on the morning of December 3, 2001. Since there is no requirement that the United States must make a formal announcement in open Court of the filing or that the United States must first seek leave of the District Court before the filing of the sentence enhancement Information, I did not make a formal announcement on the record at the time of presenting the pleading to the Deputy District Court Clerk for filing.

I only had sufficient copies of the pleading with me in my trial folder that morning to file with the clerk. After presenting the Information to Mr. Martinez for his review and immediately before I gave the pleading to the Deputy District Court Clerk for filing, I advised Mr. Martinez that I would have my secretary fax his office a copy of the pleading so that he would have a copy for his records and he agreed that this was acceptable. My secretary faxed a copy of the pleading

to Mr. Martinez's office later that morning, after it had been filed with the clerk.

The only reason there was any delay on my part in not filing the sentence enhancement Information prior to December 3, 2001, was because Mr. Martinez had always negotiated with me in good faith in the past on behalf of his clients, and I believed then that he was doing so on Mr. Espinoza's behalf in an effort to gain Mr. Espinoza's cooperation and reduce his client's exposure at sentencing. The government's case against Mr. Espinoza was very strong, as in addition to the contraband evidence seized in his motel room and incriminating statements made by him, one of their customers, John Horton, who knew Mr. Espinoza by his alias "Dan Mendoza," had agreed to cooperate and testify against him and Mr. Montoya. Since Mr. Montoya was adamant about going to trial, I wanted Mr. Espinoza, if he were interested and willing to testify truthfully, as a witness against Mr. Montoya, to show Mr. Montoya's active participation in the possession and distribution of methamphetamine in Minnesota on the dates alleged in the Indictment. Mr. Espinoza's testimony would have corroborated the testimony of Mr. Horton and undermined Mr. Montoya's defense that he was just in Minnesota to vacation at the Black Bear Casino in Carlton, Minnesota. I held off filing the pleading until the last moment to give Mr. Espinoza every opportunity to fully consider and take advantage of the proposed plea offer.

I have a clear recollection of the events leading up to this particular trial against Mr. Espinoza. I can and do state without any reservation or qualification that I gave the sentence enhancement Information pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851 to the Deputy District Court Clerk for filing on December 3, 2001, immediately after Mr. Martinez advised that his client had finally rejected my plea offer, before any questioning of the jury venire had begun, and before any official case proceeding had commenced that morning.

The information set out in this affidavit is true and correct and within my personal knowledge.

Anthony W. Brown

STATE OF TEXAS §
COUNTY OF TRAVIS §

SUBSCRIBED AND SWORN TO before me on the 2nd day of August, 2005 by Anthony W. Brown.

KATHLEEN BURLEYSON
MY COMMISSION EXPIRES
February 11, 2006

Kathy Burleyson, Notary Public
State of Texas